The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission incorporates herein by reference the previous Awards, including the Opinion and Award of the Full Commission filed 30 June 1992, the Interlocutory Opinion and Award by Deputy Commissioner Richard B. Ford filed 22 December 1993, and finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. In the spring and summer of 1994, defendants initiated a rehabilitation plan culminating in a work trial by plaintiff at Industrial Opportunities, Inc., in Marble, North Carolina. Plaintiff worked on 3 October 1994 and did not thereafter return, reporting that the effort had caused her pain.
2. A set of plaintiff's medical and rehabilitation records, consisting of seventeen parts, marked as Stipulated Exhibit Number Two, is admitted into evidence.
3. A set of records consisting of plaintiff's medical records from Dr. Buter, District Memorial Hospital, Dr. Gough, Dr. Marhaba and a decision of the Social Security Administration for Disability, is admitted into evidence.
4. Dr. Buter's file for plaintiff contains the medical records of Dr. William Gough. When contacted by the parties to determine when said records were received in his office, Dr. Buter indicated that he believed he had them available at the time of his independent medical examination but could not state with certainty that he had them at that time.
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Gough, Ms. Fortner and Mr. Adams are OVERRULED.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner John Hedrick on 11 June 1997, plaintiff was fifty-three years old. She completed nine years of formal education and later obtained a GED. Her employment history included work as a cook, a sewer and as a pharmacy sales clerk/cashier. She had also worked in a manufacturing position where she was responsible for cleaning wires. Her last employment was as a pharmacy sales clerk/cashier, a position she held for approximately eleven years. Plaintiff had not worked since 11 April 1990.
2. On or about 22 February 1994, defendants retained Holder and Radford, Inc. to assist plaintiff in her rehabilitation from her 13 March 1990 knee injury. At that time, defendants continued to pay plaintiff temporary total disability compensation pursuant to the 22 December 1993 Opinion and Award of Deputy Commissioner Ford in this matter.
3. Dr. Gough began treating plaintiff for right knee pain in 1990. Following her surgery by Dr. Phillips, Dr. Gough referred plaintiff for an evaluation by Dr. Saenger for the purpose of receiving a second opinion regarding the condition of her right knee. As part of his evaluation, Dr. Saenger reviewed the videotape of the arthroscopic surgery performed by Dr. Phillips. Dr. Saenger did not recommend any additional surgical treatment for plaintiff's right knee. Thereafter, Dr. Gough continued treating plaintiff for right knee pain, effusion and osteoarthritis. By February 1994 Dr. Gough was also treating plaintiff for diffuse pain which was caused by degenerative arthritis and fibromyalgia.
4. Plaintiff began receiving social security disability benefits on 15 November 1991 and continued to receive those benefits through the date of the hearing before the Deputy Commissioner in May 1996.
5. When defendants began their efforts to provide plaintiff with rehabilitation, plaintiff was referred back to Dr. Saenger for an evaluation of her right knee condition. Defendants sought this evaluation, in part, to determine whether plaintiff was able to participate in a vocational rehabilitation program, including participation in a sheltered workshop.
6. Plaintiff was evaluated by Dr. Saenger on 15 March 1994. Plaintiff informed Dr. Saenger that she had developed fibromyalgia since her 1990 injury and that she was unable to sit without considerable discomfort. On that date, plaintiff walked with a "somewhat stiff-kneed antalgic gait." She had no knee swelling, but she did experience pain when pressure was applied to her right knee, distal thigh and proximal leg. Plaintiff exhibited or complained of symptoms that were inconsistent with Dr. Saenger's findings on physical examination. Dr. Saenger encouraged plaintiff to seek alternative employment. He did not understand why she could not sit without considerable discomfort.
7. On 5 April 1994 plaintiff underwent a functional capacity assessment in which plaintiff performed numerous physical activities, including various lifts, pushing, pulling, carrying, sitting, stooping, kneeling, overhead reaching and grasping. While performing these activities, plaintiff failed to exert consistent efforts which tended to invalidate the results of the assessment. Despite plaintiff's failure to exert consistent effort, she was capable of performing work with physical demands in the "sedentary to light" sedentary categories of employment.
8. After participating in the functional capacity assessment, plaintiff presented to the District Memorial Hospital emergency room. Plaintiff sought this treatment because she was experiencing increased pain inside and behind her right knee. Plaintiff had no knee effusion and did not complain of pain in her upper extremities or in other body part.
9. Industrial Opportunities, Inc., (hereinafter IOI) was a sheltered workshop, located in the vicinity of plaintiff's home, where employees made and packaged sportsmen's suspenders. The workshop was designed to teach job skills to persons who were mentally or physically disabled. Persons working in the workshop were allowed to work at their own pace and could sit or stand to perform their assigned tasks. IOI provided its employees with transportation between their homes and its manufacturing facility. IOI was a reputable workshop with many connections to industry and it had a very good record of placing its employees into positions in the competitive labor market.
10. On 11 April 1994 plaintiff was scheduled to receive a brief orientation and tour of IOI's facilities. Plaintiff went to IOI's facility on that date, but refused to exit her vehicle to take the tour, stating that the pain in her right knee was too great. IOI offered to provided plaintiff with a wheelchair to use during the tour, but she continued to refuse to participate in the scheduled tour.
11. Plaintiff was scheduled to begin IOI's sheltered workshop program on 13 April 1994. However, on that date, plaintiff did not go to the workshop or call to report that she would be absent.
12. On 18 April 1994 plaintiff was re-evaluated by Dr. Gough. Plaintiff informed Dr. Gough that she believed she had re-injured her right knee, and possibly her left knee during the functional capacity assessment on 5 April 1994. In his office notes from that appointment, Dr. Gough wrote, in part, that plaintiff's disabling condition was fibromyalgia and that unless that condition improved, the likelihood of her returning to work in a position requiring repetitive motion was very low.
13. Dr. Gough referred plaintiff back to Dr. Saenger for an orthopedic evaluation on 5 May 1994. Plaintiff did not attend the scheduled appointment. However, Dr. Saenger did receive and review a copy of Dr. Gough's 18 April 1994 office note.
14. On 22 July 1994 defendants contacted Ms. Caroline Fortner, a Medical Services Consultant of the Industrial Commission and asked Ms. Fortner to arrange for plaintiff to receive an independent medical examination. Defendants sought the independent medical examination in an effort to resolve the conflict that existed between Drs. Saenger and Gough as to whether plaintiff was an acceptable candidate for participation in the sheltered workshop.
15. Ms. Fortner arranged for plaintiff to receive an independent medical examination by Dr. Buter, which was performed on 30 August 1994. At the time that he examined plaintiff, plaintiff's medical records from Dr. Gough were available to Dr. Buter and he was aware that she was under treatment for fibromyalgia. On that date, plaintiff complained of right knee pain. She had no swelling, no crepitus and no instability of her collateral ligaments. Plaintiff's right knee pain was due to osteoarthritis, secondary to her 13 March 1990 injury. On that date, plaintiff was capable of sedentary employment and was able to participate in the sheltered workshop.
16. On 29 September 1994 plaintiff attended a scheduled appointment at IOI where she toured the facility in a wheelchair. She also competed an intake interview, an interest inventory and an academic achievement test. Plaintiff was scheduled to return and begin participation in the sheltered workshop on 3 October 1994.
17. On 3 October 1994 plaintiff arrived at the sheltered workshop at 8:45 a.m., having accepted IOI's offer to provide her with transportation from home. After completing some paperwork, she began working at 9:15 a.m. Plaintiff was assigned to fold suspenders and package them into plastic bags. IOI personnel demonstrated for plaintiff the proper method of folding and packaging suspenders and she then began performing the task herself. Plaintiff worked from 9:15 a.m. until 1:30 p.m., taking scheduled breaks at 10:30 a.m. and at 12:00 noon. She also took three unscheduled breaks which she used to walk a short distance down a hallway before returning to her work station. Plaintiff's work station was equipped with a cushioned chair and footrest she could use to prop up her right leg. During her work, plaintiff complained of right leg and shoulder pain.
18. Plaintiff was scheduled to, but did not return to work at IOI on 4 October 1994. Rather, she telephoned IOI and stated that she would not return until she had been seen by her physician. Plaintiff presented to Dr. Gough on 6 October 1994 and informed Dr. Gough that she had participated in the sheltered workshop and that she was required to walk "quite a bit" in and out of the workshop and to and from the cafeteria on break. Plaintiff also told Dr. Gough that her participation in the sheltered workshop caused her to experience terrible pain.
19. On 12 October 1994 plaintiff was re-evaluated by Dr. Saenger and she reported that her participation in the workshop caused her to experience significant knee pain and swelling. On that date, plaintiff had no knee swelling, no ligament laxity and a full range of motion in her knee. Dr. Saenger informed plaintiff that he found nothing that would objectively explain plaintiff's inability to walk and function in work-related activities.
20. Following her functional capacity examination and her participation in the workshop, plaintiff's most significant complaints of pain related to her knees. Both orthopedists who evaluated plaintiff determined that she was able to participate in the workshop. Plaintiff was not required to stand or walk to perform the suspender folding and packaging task that was assigned to her. Rather, she was provided with a cushioned chair and footrest for her comfort.
21. Plaintiff was scheduled to return to IOI on 12 October 1994. Plaintiff did not return to IOI on that date, nor did she inform IOI personnel that she would be absent. Plaintiff did not thereafter return to IOI.
22. The undersigned does not accept as credible the testimony that pain associated with her fibromyalgia rendered her incapable of participating in the sheltered workshop.
23. Plaintiff was physically capable of participating in the sheltered workshop at IOI. The sheltered workshop was a reasonable method of rehabilitation designed to return plaintiff to employment in the competitive labor market. Plaintiff's refusal to participate in the vocational rehabilitation program provided by defendants was unreasonable.
24. As a result of her injury on 13 March 1990 plaintiff sustained a twenty percent permanent impairment of her right leg.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff unreasonably refused to accept the vocational rehabilitation provided by defendants. N.C. Gen. Stat. § 97-27.
2. Plaintiff is entitled to no temporary disability compensation after 12 October 1994. N.C. Gen. Stat. § 97-27.
3. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $191.07 per week for forty weeks. N.C. Gen. Stat. § 97-31 (15).
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury of 13 March 1990 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability. N.C. Gen. Stat. § 97-2 (19); N.C. Gen. Stat. § 97-25.
5. Defendants are entitled to a credit against the permanent partial disability compensation due plaintiff equal to the amount of temporary total disability compensation paid to plaintiff after 12 October 1994.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff permanent partial disability compensation at the rate of $191.07 per week for forty weeks. This amount shall be paid in a lump sum, subject to the credit due defendants in paragraph 3 and the attorney's fee approved in paragraph 4.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her injury of 13 March 1990 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
3. Defendants shall receive a credit against the permanent partial disability compensation due plaintiff in paragraph 1 equal to the amount of temporary total disability compensation paid to plaintiff after 12 October 1994.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff, after the credit due defendants, shall be deducted from that amount and paid directly to plaintiff's attorney.
5. Defendants shall pay the costs, including $100.00 to Mr. Adams as an expert witness fee if this has not been previously paid.
This is ___ January 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
DCS:bjp